U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
ENTERED
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| BRIAN DAVID OWENS | § | Case No. 04-33144 HDH-7 |
| | § | |
| Debtors | § | |

| | | |
|---|---|---|
| LINETTE BEAMAN | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 04-3285 |
| | § | |
| BRIAN DAVID OWENS | § | |
| | § | |
| Defendant | § | |

## MEMORANDUM OPINION

Linette Beaman ("Plaintiff"), the ex-wife of debtor Brian David Owens ("Defendant"), seeks a determination that amounts owed to her under the parties' Agreed Final Decree of Divorce ("Divorce Decree") (Pl.'s Ex. 1) for support are not dischargeable under Bankruptcy Code Section 523(a)(5), which excepts from discharge debts "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child."

Plaintiff brought the divorce action in Denton County, Texas, in September 2003. The parties entered into the Divorce Decree, which was approved by the state court on November 25, 2003. At issue in this adversary proceeding is the section of the Divorce Decree which requires Defendant to pay support payments in the form of contractual alimony to Plaintiff in the amount of

MEMORANDUM OPINION - Page 1

$5,400 each month.

Defendant is a homosexual and his adultery is one of the grounds for which the divorce was sought and granted. The parties come from strong, conservative religious backgrounds. Defendant's homosexuality was not something he made public until after the Divorce Decree was entered, and after he had changed counselors, some time in early 2004. Defendant alleges that the support payments placed into the Divorce Decree are not really alimony because they were extracted by Plaintiff under a threat to reveal his sexual tendencies to his employer and his family if he did not agree.

Plaintiff takes the position that the Divorce Decree calls the support payments alimony and that, therefore, the payments are not discharged, pursuant to the express terms of the statute referenced above. Plaintiff filed a summary judgment motion along these lines. Because the analysis is not quite as easy as Plaintiff suggests, the Court determined that fact issues existed and set the matter for trial. The parties tried the adversary on June 13-15, 2005, and the Court took the matter under advisement.

It is not always simple to distinguish whether an obligation is alimony, maintenance or support, as opposed to some other agreement, such as, for example, a property settlement agreement. The determination of whether an obligation is in the nature of alimony, support or maintenance is one of federal bankruptcy law, not state law. *See Grogan v. Garner*, 498 U.S. 279, 284, 111 S.Ct. 654, 658 112 L.Ed.2d 755 (1991); *In re Joseph*, 16 F.3d 86, 87 (5th Cir. 1994); *In re Biggs*, 907 F.2d 503, 504 (5th Cir. 1990); *see also*, 4 COLLIER ON BANKRUPTCY ¶ 523.11 (Lawrence P. King ed., 15th ed. rev. 2005) and the cases cited therein.

The terms "alimony" and "support" are given a broad construction to promote the

MEMORANDUM OPINION - Page 2

Congressional policy that favors enforcement of obligations for spousal and child support. *Id.* Bankruptcy courts must therefore look beyond the labels which state courts, and even the parties themselves, give obligations which debtors seek to have discharged. *In re Davidson*, 947 F.2d 1294, 1296 (5th Cir. 1991); *In re Benich*, 811 F.2d 943, 945 (5th Cir. 1987); *In re Nunnally*, 506 F.2d 1024, 1027 (5th Cir. 1975).

When a debt characterized as alimony or support is challenged, the court should hold an evidentiary hearing to determine whether the debt is actually in the nature of alimony, maintenance or support within the meaning of § 523(a)(5). If the debt is determined to be alimony, maintenance or support, it is nondischargeable and the bankruptcy court has no power to balance the need of the recipient spouse against the need of the debtor for a fresh start. *See, e.g., In re Vickers*, 24 B.R. 112, 116 (Bankr. M.D. Tenn. 1982).

When the obligation arises from a negotiated agreement, the parties often have focused on the state law implications of their agreement, not how the obligation would be characterized in a bankruptcy case. Thus, the bankruptcy court's retrospective inquiry is into the intentions of the parties with respect to an issue that they may not have fully considered.

Courts have arrived at several factors for a bankruptcy court to consider in distinguishing alimony, maintenance, or support obligations from some other obligation, such as a property division. *See, e.g., In re Fitzgerald*, 9 F.3d 517 (6th Cir. 1993); *In re Davidson*, 947 F.2d 1294 (5th Cir. 1991).

Applying the factors to the present facts leads this Court to the conclusion that most of the support payments in the Divorce Decree are nondischargeable alimony. The Divorce Decree calls the support payments contractual alimony. It provides tax benefits to the Defendant for the

payments. There is a substantial disparity in income between Defendant and Plaintiff. There was virtually no property to divide at the time of the divorce. The obligation is in the form of fixed periodic payments, rather than a lump sum. These factors, plus Plaintiff's testimony and other evidence, favor a finding of alimony.

The Court rejects the Defendant's theory that the Divorce Decree was extracted by the Plaintiff to keep her from disclosing Defendant's sexual history to the world. The evidence indicated that, at the time of the divorce, Defendant was earning a large income. His children were in free schooling because of Plaintiff's employment. The record suggests that Defendant agreed to the large amount of alimony in part to correct the wrong he committed against his family, to perhaps encourage a future relationship with his soon to be ex-wife, and to provide for her and his children close to the manner in which they had lived in the past. As pointed out by the Plaintiff, she would have no financial incentive in affecting Defendant's employment, which was the source of her alimony payments and child support. Further, Defendant's sexual tendencies, though not widely known, were known by people with whom he worked and by some of his family members. In addition, "adultery" is alleged in the petition and in the Divorce Decree. It was a matter of public record that Plaintiff claimed Defendant had been unfaithful.

In reaching this conclusion, however, the Court discounts certain positions taken by the Plaintiff in this action. Namely, the evidence before this Court suggests that the Defendant is a father who cares for and is very interested in the welfare of his children. He makes heroic, and very costly, efforts to visit his children, who have moved to Missouri with Plaintiff. Further, some of the incidents involving Defendant and his children, including the incident at the mall, appear to this Court to have been blown out of proportion, leading to supervised visitation. As mentioned at the

close of the trial, it would be this Court's hope that the parties would deal more kindly with one another, especially in dealings where the children are concerned.

Plaintiff testified that the amount provided for contractual alimony also took into account a $35,000 debt to her parents, a $10,000 credit card bill, and a $6,000 debt to her brother. The Divorce Decree provides other methods of repayment of these claims, namely directly by the Defendant and also from the sale of certain property. But, according to the Plaintiff, the alimony also was fashioned to insure that these amounts would be repaid. These amounts are clearly not in the nature of support, but may still be nondischargeable pursuant to 11 U.S.C. § 523(a)(15), unless the Debtor meets his burden under either § 523(a)(15)(A) or (B) to establish that he either lacks the ability to pay or that the benefit of making the debt dischargeable outweighs the detriment to his former spouse.

The Court finds that based on the evidence presented at trial, the Debtor has carried his burden under both provisions as to the $51,000, looking at the Debtor's current income and expenses at the time of trial and for the foreseeable future. Debtor's testimony as to the hardship the payments have created is credible and persuasive, and Plaintiff did not offer substantial evidence to the contrary. Therefore, the Court finds that $51,000 of the total amount owed to Plaintiff as contractual alimony under the Divorce Decree is dischargeable, and the remainder is not dischargeable. Accordingly, Plaintiff shall prepare a judgement of nondischargeability on her remaining support obligations under the Divorce Decree, less $51,000.

SIGNED: 6/21/05

*Harlin D. Hale signature*

**Harlin D. Hale**
**United States Bankruptcy Judge**